**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 21-14007-CIV-CANNON/Reinhart**

**ATLANTIC SPECIALTY INSURANCE**
**COMPANY**, **A/S/O MOBILE MRI**
**SOLUTIONS, LLC**,

      Plaintiff,

v.

**DELMED INC.**,

      Defendant.

_____/

<u>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**</u>

**THIS CAUSE** comes before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 68] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [ECF No. 71], both filed on May 4, 2022. The Court has reviewed the cross-motions for summary judgment, the parties' responses in opposition [ECF Nos. 72–73], the parties' replies [ECF Nos. 74–75], the parties' statements of facts [ECF Nos. 68-1, 69, 71-1, 72-1, 73-1, 74-1, 75-1], and the full record. For the reasons set forth herein, both Plaintiff's Motion [ECF No. 68] and Defendant's Motion [ECF No. 71] are **DENIED**.

**RELEVANT BACKGROUND**

This a subrogation action by Plaintiff Atlantic Specialty Insurance Company [ECF No. 1 ¶ 3; ECF No. 68-1 p. 2]. Plaintiff's subrogor is Mobile MRI Solutions, LLC ("MMS"). MMS contracted with Delmed, Inc. ("Delmed") to transport a mobile MRI trailer from Stuart, Florida, to Baton Rouge, Louisiana [ECF No. 1 ¶¶ 1, 6]. The mobile MRI trailer was damaged during transport; Plaintiff claims that Delmed is strictly liable for all damages suffered during the

transport pursuant to the Carmack Amendment to the Interstate Commerce Act, *see* 49 U.S.C. § 14706(a) [ECF No. 1 ¶¶ 7, 12–16].  The material facts are as follows.[1]

MMS leases "Mobile MRI trailers to veterinaries, neurologists, and orthopedic surgeons across the country" [ECF No. 69 ¶ 1].  The company does not transport its own mobile MRI trailers [ECF No. 69 ¶ 4].  MMS has used "Delmed to transport its mobile MRI trailers for years" [ECF No. 69 ¶ 5].  Delmed is a "mobile medical transport company[y]" that plays an "integral part [in] transporting medical equipment across the United States" [ECF No. 69 ¶ 2].  On January 2, 2022, MMS contracted with Delmed "to transport a mobile MRI trailer" from Stuart, Florida, to Sherwood South Animal Hospital in Baton Rouge, Louisiana [ECF No. 69 ¶ 7].

While transporting the mobile MRI trailer, a Delmed employee received a phone call alerting him to the fact that "stuff was hanging from the trailer [that] they were transporting" [ECF No. 69 ¶ 9].  On January 17, 2020, Delmed returned the trailer to Stuart instead of the intended destination in Baton Rogue, as reflected in Delmed's pickup and delivery instructions [ECF No. 69 ¶ 11; ECF No. 68-3 ¶ 46].  Delmed's general manager later added a note to the delivery instructions indicating that the trailer was "returned to Stuart [Florida] as the Roof Hatch was not secure as customer had indicated, and the wind caught hold of it and tore the roof" [ECF No. 68-3 ¶ 47].

"A mobile MRI trailer is a mobile medical office with an MRI installed for patients to have their exams done" [ECF No. 69 ¶ 3].  Mobile MRI trailers feature roof hatches that weigh approximately 300 pounds [ECF No. 68-3 ¶ 15].  Generally, the roof hatch of the trailer will stay closed if the roof hatch is unsecured [ECF No. 68-3 ¶ 24].  However, it is still possible for the roof

---

[1] These facts are drawn from the parties' statements of facts [ECF Nos. 68-3, 69, 71-1, 72-1, 73-1, 74-1, 75-1] and are undisputed unless otherwise noted in this Order.

hatch to be lifted; "[a]t at certain point, hydraulic pistons assist with the opening of the hatch" [ECF No. 68-3 ¶ 24].  After hearing about a prior incident where a roof hatch was left open, Delmed "added 'Roof Hatch Secured' to their pickup inspection checklist" [ECF No. 69 ¶ 6].

MMS's standard practice is to keep the roof hatch "secured and closed at all times unless it is presently being worked on" [ECF No. 72-1 ¶ 67].  If a roof hatch were to be left open, the president of MMS, "Gregg Pearson[,] would shut it" and then proceed with due diligence to determine why it was left open and reprimand the person responsible [ECF No. 72-1 ¶ 68].  Also, MMS implemented protocols to maintain the upkeep of mobile MRI trailers.  MMS utilized two independent contractors who "regularly worked on the unit to clean, maintain, recondition, and prepare [the units] for transport" [ECF No. 72-1 ¶ 64].  As part of this process, one of the independent contractors "opens the roof hatches on these trailers" [ECF No. 72-1 ¶ 64].  MMS did not provide training or instruction to the independent contractors concerning "signing bills of lading or related documents, or checklists" [ECF No. 72-1 ¶ 80].

It is undisputed that the roof hatch was closed "at the time the Delmed driver, [William Wilder] arrived" and when he pulled away with the trailer [ECF No. 71-1 ¶ 12; ECF No. 73-1 ¶ 11; ECF No. 71-1 ¶13].  However, it is disputed whether the roof hatch was *secured* by the three to six hatches at that time [ECF No. 71-1 ¶ 5; ECF No. 73-1 ¶ 11].  Further, it is undisputed that the roof hatch was "standing up four to six feet when it was removed, and it was certainly not closed when it was sheared off" [ECF No. 71-1 ¶ 5; ECF No. 72-1 ¶ 80; ECF No. 73-1 ¶ 5].

Plaintiff initiated this action on January 6, 2021, bringing one count against Defendant under the Carmack Amendment and three other counts against Defendant for negligence and breach of contract [ECF No. 1].  On February 12, 2021, the parties filed a stipulation agreeing that the Carmack Amendment applies to this case, after which Plaintiff voluntarily withdrew Counts

II–IV [ECF No. 10].  After the close of discovery, both parties made cross-motions for summary judgment [ECF Nos. 68, 71].  Plaintiff's Motion seeks summary judgment on Count I—the Carmack Amendment Claim [ECF No. 68].  Defendant's Motion likewise seeks summary judgment on the same count [ECF No. 71].  Both motions are ripe for adjudication [ECF Nos. 72–73 (responses); ECF Nos. 74–75 (replies)].

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). Speculation or conjecture cannot create a genuine issue of material fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party.  *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).  Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment.  *Bailey*

*v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e). The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## DISCUSSION

As mentioned, both parties seek summary judgment on the sole remaining cause of action in this case: Plaintiff's Carmack Amendment Claim.[2]

The Carmack Amendment to the Interstate Commerce Act imposes strict liability on common carriers "for actual loss of or damage to shipments in interstate commerce." *A.I.G. Uru. Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003). To establish a prima facie case under the Carmack Amendment, the plaintiff must prove "by a preponderance of the evidence that (1) the goods were delivered to the carrier in good condition, (2) the goods arrived at the destination in damaged condition, and (3) a specified amount of damages resulted." *Id.* (citing *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 901 F.2d 1034, 1037 (11th Cir. 1990)). If a prima facie case is established, the burden then "shifts to the carrier to prove (1) that it was free from negligence, *and* (2) that the damage to the cargo was caused by one of the five excusable factors: '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.'" *Id.* (quoting *Fine Foliage*, 901 F.2d at 1037). If the carrier is unable to meet this burden, then the carrier is held liable. *Id.*

---

[2] In considering Plaintiff's Motion [ECF No. 68], the Court views the evidence and all factual inferences arising from it in the light most favorable to Defendant. In considering Defendant's Motion [ECF No. 71], the Court views the evidence and all factual inferences arising from it in the light most favorable to Plaintiff.

Plaintiff argues that the Court should grant summary judgment in its favor because (1) Plaintiff has established the prima facie elements of a claim under the Carmack Amendment [ECF No. 68-1 p. 9], and (2) there is no genuine dispute of material fact that Defendant was not negligent [ECF No. 68-1 pp. 11–13]. Plaintiff also maintains that it is entitled to judgment as a matter of law because the record is devoid of facts to support Defendant's "fault of the shipper" or "inherent device" defenses [ECF No. 68-1 pp. 5, 8–9, 11–14].

Defendant seeks the opposite resolution—summary judgment in its favor on the theory that Plaintiff cannot establish the prima facie elements necessary to support a Carmack Amendment claim [ECF No. 71 pp. 18–19]. Even if Plaintiff could make out a prima facie case, Defendant continues, summary judgment remains appropriate in Defendant's favor because there is no evidence in the record by which Plaintiff can overcome Defendant's defenses of "act of the shipper" and "inherent vice" [ECF No. 71 pp. 8–9, 17–18, 20]. To further this point, Defendant argues that the record indicates that either one of two things happened that caused the damage to the MRI trailer, both of which would demonstrate that Defendant is not liable: (1) either the roof hatch was secured and "came open by wind, or hydraulics, [] stood four to six feet above the roof" and was eventually "sheared off," thereby showing that the trailer had a latent defect [ECF No. 71 p. 9]; or (2) the roof hatch was closed, yet unsecured, but Defendant still is not liable because it relied on Plaintiff's representation that the hatch was secured [ECF No. 71 pp. 3, 9–14, 18].

Upon a full review of the record, the Court determines that factual disputes preclude entry of summary judgment in either party's favor. Defendant presents evidence, for example, that the roof hatch was secured, pointing to MMS's practice of multiple walk-throughs, MMS's policy of securing the hatch once it is closed, and the "pick-up checklist" that was authorized by both parties indicating that the hatch was secured [ECF No. 71 p. 7]. By contrast, Plaintiff contends that the

hatch was not secured because no one verified that the hatch was secured rather than just closed. For this point, Plaintiff relies on the testimony of an MMS employee who stated that although he conducted walk-throughs as a general practice, he was not sure that he conducted a walk-through of the trailer in question [ECF No. 68-4 p. 57; ECF No. 73-1 ¶ 9].  Plaintiff also points to the testimony of the Delmed driver and MMS's president indicating that the Delmed driver never verified whether the hatch was secure despite marking that the hatch was secured on the "Pickup Inspection checklist" [ECF No. 68-4 pp. 52–53; ECF No. 68-17 ¶¶ 6–9; ECF No. 68-3 ¶¶ 40–43]. Beyond disputing whether the roof hatch was secure, the parties also dispute whether the trailer had a latent defect that could have resulted in the hatch door "flying off" even if the door was secured.  Plaintiff says there is no evidence that the trailer contained a latent defect [*see* ECF No. 68-3 ¶ 39 (stating that the trailer passed an inspection less than one week before transport and MMS's owner stated that the trailer was "perfect")]—but Defendant points to contrasting evidence [*see* ECF No. 72 (stating that a secured roof hatch that can raise four to six feet during transport is defective); ECF No. 74 ¶ 19 (highlighting a MMS owner's testimony that issues with roof hatches opening during transport is discussed within the industry)].

At bottom, the genuine disputes of fact revolve around whether the roof hatch was secured and whether the MRI trailer had a latent defect.  Because the determination of these facts affects the outcome of the suit—*i.e.*, whether the prima facie elements are met and whether affirmative defenses prevail—they are material.  Resolution of these factual issues will require credibility determinations and the weighing of evidence, making trial rather than summary judgment the appropriate avenue to resolve this case.  Summary judgment is not warranted.

CASE NO. 21-14007-CIV-CANNON/Reinhart

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [ECF No. 68] is **DENIED**.

2. Defendant's Motion for Summary Judgment [ECF No. 71] is **DENIED**.

3. As previously ordered, this matter remains scheduled for trial during the Court's two-week trial calendar beginning on **October 24, 2022** [ECF No. 77].

4. The Court will address Plaintiff's scheduling concern [ECF No. 78 p. 3 n.1] at the Calendar Call on **October 18, 2022, at 1:45 p.m.** [ECF No. 77].

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 13th day of October 2022.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record